IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TRICIA Z. COOPER,

              Plaintiff,

    v.

INTEL CORPORATION LONG TERM
DISABILITY PLAN,

              Defendant.

No. 3:13-cv-01852-HZ

OPINION & ORDER

Richard H. Rizk
Jerome P. Larkin
Richard Rizk, Attorney at Law
0434 SW Iowa St
Portland, OR 97219

    Attorneys for Plaintiff

Nancy B. Pridgen
Monnolly Pridgen LLP
3340 Peachtree Rd, Ste 1800
Atlanta, GA 30326

/ / /
/ / /

1 - OPINION & ORDER

Sarah J. Ryan
Jackson Lewis LLP
1001 SW 5th Ave, Ste 1205
Portland, OR 97204

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

    Plaintiff Tricia Cooper brings this ERISA action under 29 U.S.C. § 1132(a) against Defendant Intel Corporation Long Term Disability Plan for the denial of long term disability benefits. Before me are Plaintiff's motion for summary judgment [17] and Defendant's cross-motion for summary judgment [18]. I find that Defendant's denial of long term disability benefits was not an abuse of discretion. Therefore, I deny Plaintiff's motion and grant Defendant's motion.

## BACKGROUND

    Plaintiff worked as a Project/Program Coordinator at Intel and was a participant in Intel's long term disability ("LTD") plan. Compl. ¶¶ 5, 9; Answer ¶¶ 5, 9. Plaintiff stopped working for Intel around January 12, 2010 due to chronic low back pain, spondylosis, and fibromyalgia.[1] Admin. R. ("AR") 399. Plaintiff received short-term disability benefits from January 13, 2010 through January 9, 2011. Compl. ¶ 11; Answer ¶ 11. Plaintiff applied to Reed Group for LTD benefits in January 2011. AR 456. Reed Group is a third-party claims administrator for Defendant. Id. Plaintiff received LTD benefits for six months, but then Reed Group notified Plaintiff that the LTD benefits would be discontinued on July 11, 2011 because Plaintiff did not have a qualifying disability within the meaning of the LTD plan. AR 619-22.

---

[1] Plaintiff claimed other conditions in her application for LTD benefits, but only these three conditions are raised in this case. AR 11.

2 - OPINION & ORDER

Under Intel's LTD plan, "disability" is defined as "any illness or injury that is substantiated by Objective Medical Findings and which render a Participant incapable of performing work." AR 13. Additionally, because 18 months had passed since Plaintiff's initial claim for disability, "a Participant must be unable to perform the work of any occupation for which he or she is or becomes reasonably qualified for by training, education or experience." AR 13-14. "Objective Medical Findings" is defined as

> a measurable, independently-observable abnormality which is evidenced by one or more standard medical diagnostic procedures including laboratory tests, physical examination findings, X-rays, MRI's, EEG's, ECG's, "Cat scans" or similar tests that support the presence of a disability or indicate a functional limitation….[T]ests that depend on Participant self-reports, such as trigger point/tender point tests, are not considered objective[.] Tests whose results vary depending on the Participant's expenditure of effort…likewise are not considered objective[.]

AR 14. Furthermore, "Objective Medical Findings do not include physicians' opinions…based on the acceptance of subjective complaints (e.g. headache, fatigue, pain, and nausea)[.]" Id. In Plaintiff's case, Reed Group found there was a lack of "Objective Medical Findings" to support proof of disability. AR 620.

Plaintiff appealed and Reed Group affirmed the denial on January 27, 2012. AR 608. Plaintiff then opted for a voluntary appeal to Claim Appeal Fiduciary Services, Inc. ("CAFS"). AR 373. CAFS is an "independent fiduciary" retained by Intel to review LTD plan claim appeal denials. AR 11. In August 2012, CAFS upheld the denial of LTD benefits. Id. CAFS concluded that "[t]he objective medical findings do not support the existence of any medical or psychiatric diagnoses which render [Plaintiff] "Disabled" as defined in the LTD policy." AR 28.

## STANDARDS

Traditionally, summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

3 - OPINION & ORDER

56(a). However,

> Traditional summary judgment principles have limited application in ERISA cases governed by the abuse of discretion standard. Where, as here, the abuse of discretion standard applies in an ERISA benefits denial case, a motion for summary judgment is, in most respects, merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.

Stephan v. Unum Life Ins. Co. of Am., 697 F.3d 917, 929–30 (9th Cir. 2012) (citations, quotation marks omitted).  In addition, "judicial review of benefits determinations is limited to the administrative record—that is, the record upon which the plan administrator relied in making its benefits decision[.]" Id. at 930 (internal quotation marks omitted).  "[W]hen a court must decide how much weight to give a conflict of interest under the abuse of discretion standard[,]…the court may consider evidence outside the [administrative] record." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 970 (9th Cir. 2006) (en banc).  In considering "evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest[,]" id., traditional rules of summary judgment apply, and "summary judgment may only be granted if after viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact." Stephan, 697 F.3d at 930 (internal quotation marks omitted).  "[T]he decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise." Abatie, 458 F.3d at 970.

## DISCUSSION

I.   Standard of Review

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire &

Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  When the administrator has discretionary authority, the court "review[s] the administrator's decision for abuse of discretion[.]"  Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 673 (9th Cir. 2011).  "Under this deferential standard, a plan administrator's decision 'will not be disturbed if reasonable.'"  Stephan, 697 F.3d at 929 (quoting Conkright v. Frommert, 559 U.S. 506, 521 (2010)).  "This reasonableness standard requires deference to the administrator's benefits decision unless it is (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record."  Id. (internal quotation marks omitted).

   The Intel LTD plan administrator had discretionary authority to determine eligibility for benefits and construe terms of the Plan.  AR 15, 19.  Both parties agree that the appropriate standard of review is abuse of discretion.  Pl.'s MSJ 9; Def.'s MSJ 15.  However, Plaintiff argues that the court should review denial of benefits with additional "skepticism" because Defendant has a structural conflict of interest.  Pl.'s MSJ 9.  When "the insurer acts as both funding source and administrator[,]" there is a structural conflict of interest that "must be weighed as a factor in determining whether there is an abuse of discretion."  Salomaa, 642 F.3d at 674.  Plaintiff argues that Intel "both administers the claim process and acts as the funding source" of the benefits, and therefore operates under a structural conflict of interest.  Pl.'s MSJ 9.

   Defendant concedes that Intel funds the benefits, but argues that there is no conflict because it delegates the claims and appeals determinations to Reed Group and CAFS.  Def.'s MSJ 17.  Plaintiff also points out that (1) Intel has "ultimate authority" over Reed Group because Intel has a Quality Assurance Review team that reviews Reed Group's actions, Pl.'s MSJ 7, and (2) both Reed Group and CAFS have an incentive to minimize the payment of benefits so that Intel will continue to contract with them for their services.  Pl.'s Opp'n Def.'s MSJ 3.

5 - OPINION & ORDER

First, Intel's Quality Assurance Review team addresses concerns regarding the processing of the claim or appeal, not the merits of the decision to grant or deny benefits. AR 612. The Quality Assurance Review team "is not a decision-making body, and therefore does not have authority to overturn or supersede any existing rulings, but instead offers a *review of processes, procedures and communications* used in and around the determination of [the participant's] claim or appeal." Id. (emphasis added). Intel did not have "ultimate authority" over Reed Group's decision, as Plaintiff suggests. Second, Plaintiff seeks an inference that Reed Group and CAFS are financially motivated to deny benefits merely because Intel has hired them to process claims and appeals. There is no evidence that Intel's contracts with Reed Group or CAFS is dependent on the decisions made by either group. I find that there is no structural conflict of interest, and thus, no additional skepticism is warranted in reviewing the denial of benefits.

Plaintiff additionally argues that Dr. Kevin Trangle, who performed a medical record review on behalf of CAFS, was biased "against the validity of fibromyalgia as a disabling medical condition, based on his ignorance of the current state of medicine[.]" Pl.'s MSJ Reply 2. Plaintiff submitted two exhibits that were not part of the administrative record. Larkin Decl. Exs. 11, 12. Exhibit 11 consists of two abstracts regarding the relationship between joint hypermobility and people with fibromyalgia. Exhibit 12 is an article titled "Preliminary Diagnostic Criteria for Fibromyalgia and Measurement of Symptom Severity." The article proposes criteria for diagnosis of fibromyalgia without using the tender point exam. Defendant argues that these exhibits may not be considered because they were not part of the administrative record. Def.'s Opp'n Pl.'s MSJ 0 n1. As stated above, judicial review is limited to the administrative record. Stephan, 697 F.3d at 930. However, in determining whether there is a

conflict of interest, evidence outside of the administrative record can be considered. Abatie, 458 F.3d at 970. Such evidence is considered and weighed according to the "traditional rules of summary judgment." Nolan v. Heald College, 551 F.3d 1148, 1154 (9th Cir. 2009).

Plaintiff argues that the two abstracts and the medical article show bias, and thus a conflict of interest, in that Dr. Trangle does not believe that fibromyalgia is a "true disease" and has "align[ed] himself with insurance companies." Pl.'s MSJ Reply 3. The Ninth Circuit has found an inference of bias when a doctor performing medical record reviews received "substantial work and monies" from an insurer who processed claims for benefits. Nolan, 551 F.3d at 1152 (in one year, 82% of doctor's time was spent performing medical reviews for which he received $75,945 in compensation). I fail to see how the abstracts and medical article show that Dr. Trangle is biased.

Further, in reviewing Dr. Trangle's report, he notes that fibromyalgia is a "musculoskeletal problem that has become more widely recognized." AR 547. He discusses the pathophysiology fibromyalgia and recognizes the American College of Rheumatology's two criteria for classification of fibromyalgia—widespread pain for at least three months and pain in 11 of 18 tender points. AR 547, 550. Dr. Trangle then concludes that fibromyalgia is "not well-recognized…in terms of a disease…is not accepted by all insurance companies…is more of a psychiatric or psychosomatic problem as opposed to a true disease…[and] is often manifested exclusively by subjective expressions of pain without any objective medical findings." AR 551. Even viewing the abstracts and medical article in the light most favorable to Plaintiff, I decline to infer that Dr. Trangle is biased against or ignorant about fibromyalgia. There is no indication of whether the findings in the two abstracts and medical article have been put into common practice to diagnose fibromyalgia. Dr. Trangle's conclusions about fibromyalgia are also not

7 - OPINION & ORDER

contradicted by the abstracts or the medical article.  I find that the abstracts and medical article fail to show that Dr. Trangle was biased.

III.     Analysis

CAFS denied Plaintiff's claim for benefits because the objective medical findings did not support a finding of disability that rendered Plaintiff incapable of working, as defined in the LTD plan.  As stated earlier, "Objective Medical Findings" is defined as

> a measurable, independently-observable abnormality which is evidenced by one or more standard medical diagnostic procedures including laboratory tests, physical examination findings, X-rays, MRI's, EEG's, ECG's, "Cat scans" or similar tests that support the presence of a disability or indicate a functional limitation….[T]ests that depend on Participant self-reports, such as trigger point/tender point tests, are not considered objective[.]  Tests whose results vary depending on the Participant's expenditure of effort…likewise are not considered objective[.]

AR 14.

Under the abuse of discretion standard, the Administrator's denial of benefits will stand unless it is illogical, implausible, or without support in the record.  Stephan, 697 F.3d at 929.  An ERISA plan administrator also abuses her discretion if she relies "on clearly erroneous findings of fact." Day v. AT&T Disability Income Plan, 698 F.3d 1091, 1096 (9th Cir. 2012).  Plaintiff argues that Defendant abused its discretion because the CAFS relied on "clearly erroneous findings of fact."  Pl.'s MSJ 10.  In particular, Plaintiff argues that CAFS's "conclusion is clearly erroneous because the evidence of [Plaintiff's] disabling conditions [of fibromyalgia, lumbar degenerative disc disease, and spondylosis] is supported by numerous objective medical findings."  Id. at 11.

Defendant responds that it is not enough for Plaintiff to prove the existence of her conditions, but that the conditions must also prevent her from performing work in any occupation.  Def.'s Opp'n Pl.'s MSJ 5.  Indeed, CAFS explains that "while [Plaintiff] has

demonstrated by means of objective medical findings that she has been diagnosed with certain medical conditions, the diagnoses in themselves do not demonstrate that the conditions are of such severity that they preclude her from functioning at a sedentary work level." AR 30. Plaintiff argues that Defendant has misconstrued its argument, yet frames the issue as "whether CAFS abused its discretion by failing to even analyze the persuasive force of the medical evidence that Plaintiff did submit, by dismissing such evidence based on a clearly erroneous finding that her disabling conditions were not supported by objective medical findings." Pl.'s MSJ Reply 7-8.

    A.    Fibromyalgia

Plaintiff argues that the following opinions and reports are objective medical findings of Plaintiff's fibromyalgia: (1) Dr. Gary Ward's assessment of joint hypermobility on April 4, 2011, AR 402, coupled with the abstracts of articles discussing the relationship of joint hypermobility and fibromyalgia, Larkin Decl. Ex. 11 and (2) nurse practitioner Cheryl Hryoiw's assessment of hives, low-grade fever, high sedimentation rate, irritable bowel syndrome, and joint hypermobility on August 16, 2010, AR 187-190, coupled with the medical article on diagnostic criteria for fibromyalgia, Larkin Decl. Ex. 12.

As an initial matter, I do not consider the abstracts or medical article in my analysis because these documents are not part of the administrative record. Although I considered them to determine whether there was a conflict of interest, the question of whether there is an abuse of discretion rests solely on the administrative record. Therefore, I will consider only Dr. Ward's and Ms. Hryoiw's reports in determining whether there was an abuse of discretion.

Dr. Ward's notes from April 4, 2011 regarding fibromyalgia are brief. Under the "Assess" section, he notes "[g]eneralized fibromyalgia and benign joint hypermobility, diagnoses

8/16/10." At most, this evidence shows that Dr. Ward previously diagnosed Plaintiff with fibromyalgia and joint hypermobility. There is no discussion of any functional limitations.

Plaintiff reported to Ms. Hryoiw that she has a history of hives, a low-grade fever nearly every day, and irritable bowel syndrome.[2] AR 187. During the physical examination, Ms. Hryoiw found that Plaintiff was joint-hypermobile and that she had 18 of 18 tender points. AR 189. From lab tests, Ms. Hryoiw noted that Plaintiff had a high sedimentation rate. AR 190. Ms. Hryoiw diagnosed Plaintiff with fibromyalgia and stated that "[v]ulnerabilities for the development of fibromyalgia in her include benign joint hypermobility." AR 189. CAFS commented on the findings in Ms. Hryoiw's report as follows:

> Although she reported intermittent low-grade fevers, her temperature was normal at the time of all of her physician office visits. Despite multiple imaging studies and repeated physical examinations, an etiology for her reported fevers was never discovered. Her mildly elevated sedimentation rate…[was] never explained. These studies are not specific for any disease process and may be related to underlying generalized inflammation related to her fibromyalgia. *Overall, the above findings are not associated with any functional limitation or disability*.

AR 26 (emphasis added). Neither Dr. Ward nor Ms. Hryoiw opined that Plaintiff had functional limitations.

In her reply, Plaintiff raises another report by Dr. Ward from an April 9, 2012 office visit to show that she is unable to work full-time in a sedentary position. Pl.'s MSJ Reply 7. Dr. Ward notes that Plaintiff "is basically nonfunctional, housebound and primarily bedbound all but 2-3 days per month." AR 173. However, this statement about Plaintiff's functional status was written "as reported by the patient and her husband." Id. Dr. Ward merely parroted the limitation that Plaintiff is bedbound all but two to three days a month, as reported by Plaintiff

---

[2] The self-reporting of these symptoms to Ms. Hryoiw does not qualify as objective medical findings under the plan's definition.

and her husband.  Plaintiff further argues that CAFS's denial was not based on the severity of her conditions, but that there was a lack of objective medical findings.  Pl.'s MSJ Reply 9.  Thus, the presence of objective medical findings for Plaintiff's fibromyalgia is sufficient to find an abuse of discretion.  Plaintiff misconstrues the basis for CAFS's denial.  As quoted earlier, CAFS stated that "the diagnoses in themselves do not demonstrate that the conditions *are of such severity that they preclude her from functioning at a sedentary work level*."  AR 30 (emphasis added).  CAFS's denial is based on the lack of objective medical findings that show Plaintiff cannot perform any work, even at the sedentary work level.

   B.  Lumbar Degenerative Disc Disease and Spondylosis

  Plaintiff makes a similar argument regarding her conditions of degenerative disc disease and spondylosis with radiculopathy.  Plaintiff argues that there are objective medical findings of both conditions.  Pl.'s MSJ 14.  Again, as stated in the fibromyalgia analysis, the issue is not whether there are objective medical findings of these conditions, but whether these conditions are disabling such that Plaintiff is incapable of performing any work.

  Plaintiff refers to the following records in support of its argument:  (1) Dr. Ward's EMG study on April 19, 2010, (2) Dr. Joan Takacs' report from June 13, 2011, and (3) a three-phase bone scan by Dr. Henry Vea on April 12, 2010.  Dr. Trangle, the independent medical record reviewer that CAFS hired, reviewed all of these records and summarizes them in great detail in his report.  AR 538, 542.  Based on Dr. Trangle's review, CAFS found that although Plaintiff has mild degenerative disc disease and spondylosis, there was no "evidence of any residual disc herniation, nerve root compression or any anatomic lesion that would be expected to lead to radiculopathy of any sort."  AR 27.  Although Dr. Ward's EMG study showed "mild chronic compromise of the right L5 nerve root," Plaintiff's "clinical presentation was not consistent with

an active radiculopathy." AR 27.  Dr. Takacs found that there was "no objective evidence of radiculopathy or neuropathy" and no "radicular syndrome of the lower limbs."  AR 200.  Dr. Takacs recognized that Plaintiff had back discomfort and arthritis, but that "subjective complaints far outweigh physical findings."  Id.  Dr. Takacs concluded that Plaintiff was not disabled and could perform light work.  AR 201.

CAFS ultimately concluded that Plaintiff's "mild degenerative and postoperative changes in the lumbar spine…would not preclude her from working in a light duty capacity; even in the presence of mild radicular findings."  Id.  Plaintiff asks the court to conclude that based on Dr. Ward's, Dr. Takacs', and the bone scan, Plaintiff's degenerative disc disease and spondylosis prevent Plaintiff from performing any work.  However, I do not find that CAFS's findings were clearly erroneous.

C.  Paper-Only Review

Plaintiff argues that a paper-only review of Plaintiff's claim for benefits factors into whether there was an abuse of discretion.  Pl.'s Opp'n Def.'s MSJ 5.  "[W]hether the plan administrator subjected the claimant to an in-person medical evaluation or relied instead on a paper review of the claimant's existing medical records," is one factor for the reviewing court to consider when determining whether the plan administrator abused its discretion.  Montour v. Hartford Life & Accident Ins. Co., 588 F.3d 623, 630 (9th Cir. 2009).  In June 2011, Plaintiff was evaluated in person by Dr. Takacs on the request of Reed Group.  AR 570.  Although CAFS did not request another independent medical evaluation, it considered Dr. Takacs' opinion in its decision to deny benefits.  AR 24.  I disagree that Plaintiff's claim was given a paper-only review.

/ / /

CONCLUSION

Based on the reasons above, I find that Defendant did not abuse its discretion in denying Plaintiff's claim for LTD benefits. Plaintiff's motion for summary judgment [17] is denied and Defendant's motion for summary judgment [18] is granted.

IT IS SO ORDERED.

Dated this \_\_\_\_8\_\_\_\_ day of August, 2014.

_____
MARCO A. HERNÁNDEZ
United States District Judge